Michael J. Farrell, OSB #902587
mfarrell@martinbischoff.com
Michael A. Yoshida, OSB #065631
myoshida@martinbischoff.com
MARTIN BISCHOFF TEMPLETON LANGSLET & HOFFMAN LLP
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone: (503) 224-3113
Facsimile: (503) 224-9471

Attorneys for Defendants JP Morgan Chase Bank N.A.

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Eugene Division

| | |
|---|---|
| JOE AND TERI GOSCHIE,<br><br>Plaintiff,<br><br>v.<br><br>JPMORGAN CHASE BANK, N.A.,<br><br>Defendant. | Case 6:10-cv-06424-AA<br><br>DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW |

## MOTION

Defendant JPMorgan Chase Bank, N.A., as acquirer of certain assets and liabilities of Washington Mutual Bank from the Federal Deposit Insurance Corporation acting as Receiver for Washington Mutual Bank ("Defendant" or "Chase"), hereby moves for partial summary judgment as follows:

## LOCAL RULE 7.1 CERTIFICATION

The parties made a good faith effort through telephone conference on June 5, 2014, to resolve each issue in dispute in this Motion but were unable to do so.

Page 1 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## INTRODUCTION

This lawsuit stems from Plaintiffs' rejection of a proposed modification agreement offered to them in May 2010 in order to negotiate an agreement with more favorable terms. In November 2009, after the Plaintiffs defaulted on their mortgage, Chase sent them a proposed modification agreement, which instructed Plaintiffs to sign and return the agreement to Chase in a pre-paid Federal Express ("FedEx") envelope by November 24, 2009. Chase did not receive the signed Agreement by the November 24 deadline. Plaintiffs claim they sent the Agreement to Chase in the pre-paid FedEx envelope provided by Chase by placing it in a FedEx drop box in Eugene on either November 15 or 16. However, Chase did not receive it. In fact, over the next several months, Chase repeatedly checked with FedEx and confirmed that the package's FedEx tracking number was never activated, meaning that FedEx had no record of receiving it from Plaintiffs.

Several months later, Chase told Plaintiffs it had never received the executed Agreement. Plaintiffs then faxed a copy of the Agreement to Chase on March 22, 2010. Unfortunately, Chase's underwriting department determined that the proposed terms of the November Agreement were no longer valid because the offer to accept that agreement expired four months earlier. Chase sent Plaintiffs a new proposed Agreement on or about May 13, 2010. The new proposed Agreement closely resembled the November 2009 Agreement (e.g., identical interest rate and loan term, similar monthly payment, etc.), but the proposed agreement included a $7,706.27 higher adjusted unpaid principal balance because of the passage of additional time without Plaintiffs making their contractual payments. Plaintiffs rejected the proposed Agreement and made a counteroffer to Chase, requesting that Chase reduce Plaintiffs' principal balance to the original loan amount of $495,000 (an approximate $50,000 principal write-off) and reduce the modified loan term from 40 to 30 years. No agreement was reached and this lawsuit followed.

MARTIN, BISCHOFF, TEMPLETON, LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

Despite Plaintiffs' admitted default on their original loan obligation and the fact that Chase did not timely receive the November modification agreement, Plaintiffs allege that Chase engaged in a company-wide policy to intentionally drive borrowers, such as Plaintiffs, into foreclosure for financial gain. Plaintiffs' Second Amended Complaint alleges claims for fraud, unlawful trade practices, and punitive damages, alleging that Chase *intentionally* mishandled their loan modification application so that Chase could profit from the sale of their home. Implicit in these claims is an allegation that Chase *purposefully* lost their November 2009 Agreement. However, Plaintiffs have no evidence to support such a claim because Chase did not receive the executed agreement until March 2010. Plaintiffs did not document the FedEx tracking number that accompanied the Agreement, and they never attempted to contact FedEx in order to determine whether FedEx or Chase received the packet. Plaintiffs cannot produce any evidence to rebut Chase's affirmative showing that FedEx did not receive the package from Plaintiffs and, therefore, Chase did not timely receive the Agreement in November 2009. Chase respectfully requests the following summary judgment relief:

1. That Plaintiffs' fraud claim be dismissed because there is no evidence that Chase sought to drive them into foreclosure by intentionally mishandling their loan modification application;

2. That Plaintiffs' UTPA claim be dismissed because there is no evidence that Chase made false or misleading statements to Plaintiffs regarding their loan modification application;

3. That Plaintiffs' claim for punitive damages be dismissed because Plaintiffs have not met their burden of producing clear and convincing evidence that Chase acted with malice or reckless and outrageous indifference as to Plaintiffs' loan;

4. That Plaintiffs' breach of contract and covenant of good faith and fair dealing claims be dismissed because Plaintiffs cannot establish a contract formation as to the November 2009 modification proposal; and

Page 3 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

5. That Plaintiffs' request for attorney fees under ORS 20.082 be denied because Plaintiffs did not provide Chase a pre-litigation payment demand.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party carries the initial burden of proof. The party meets this burden by identifying portions of the record on file that demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-24 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). Once this initial burden is satisfied, the non-moving party must demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Id.* The non-moving party may not, however, rely solely on the facts as alleged in the pleadings. *Shwarz v. United States,* 234 F.3d 428, 436 (9th Cir. 2000). Rather, it must come forth with "affidavits or other sources of evidence that set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations and citations omitted).

The court must view the evidence in the light most favorable to the non-moving party. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 531 (9th Cir. 2000) (citations omitted). Deference to the non-moving party does have some limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56 (e). The "mere existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson,* 477 U.S. at 252. Therefore, where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## FACTUAL BACKGROUND

### 1. The Mortgage Loan, Default, and First Loan Modification Offer

On May 19, 2008, Plaintiffs obtained a $495,000 mortgage loan from Washington
Mutual Bank, FA, with respect to real property located at 2127 Kingfisher Drive, Eugene,
Oregon (the "Property"). (Mullen Decl., Ex. 1). The loan was secured by a Deed of Trust
encumbering the Property. (Yoshida Decl., Ex. 1). The 30-year loan provided that Plaintiffs
would make interest-only payments of $2,732.81 for the first seven years of the loan, followed
by principal and interest payments at an adjustable interest rate starting on August 1, 2015.
(Mullen Decl., Ex. 1, p. 2, section 4). Plaintiffs were also responsible for paying taxes and
insurance on the Property and were required to pay roughly $430 a month into their escrow
account to cover such expenses. (Mullen Decl., Ex. 1, p. 1; Yoshida Decl., Ex. 2, p. 33:2-5).

Plaintiffs defaulted on the terms of their Note and Deed of Trust by failing to make their
monthly mortgage payment in September 2008. (Yoshida Decl., Ex. 2. pp. 18:23-19:6). On
April 13, 2009, Chase wrote Plaintiffs to notify them of the possibility of qualifying for a home
loan modification. Plaintiffs thereafter started a Modification Trial Period Plan in May 2009,
which called for reduced monthly payments of $2,493.62. (Mullen Decl. ¶ 3). Plaintiffs
successfully made their trial period payments between May and August 2009. (*Id.*). However,
they failed to make their next payments in September through November 2009. (*Id.*).

On or about November 10, 2009, Chase issued Plaintiffs a final Home Affordable
Modification Agreement via FedEx. (Mullen Decl., Ex. 2). The Agreement included an
adjusted principal balance ("APB") of $536,836.34 and called for reduced monthly mortgage
payments of $2,419.19.[1] (Mullen Decl., Ex. 2). The $2,419.19 monthly payment consisted of

---

[1]    The Agreement re-amortized Plaintiffs' loan over a 40-year period and called for a reduced interest rate
schedule of 2% (years 1-5), 3% (year 6), 4% (year 7), and 5% (years 8-40). The Agreement also called for a lump
sum payment of $3,000 upon the expiration of the 40-year loan term. (Mullen Decl., Ex. 2, pp. 7-8).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

$1,616.59 toward principal/interest and $803.40 to cover escrow expenses, including taxes and insurance. (*Id.*).

The November 2009 modification packet included a self-addressed "standard overnight" FedEx envelope (with corresponding tracking number 7930-0542-4279). (Mullen Decl., Ex. 2, p. 21). The proposed Modification Agreement provided that "[t]o accept your modification, <u>you must sign and return both copies</u> of the Modification Agreement <u>to us in the enclosed pre-paid envelope by November 24, 2009</u>." (Mullen Decl., Ex. 2, p. 2). Plaintiff Teri Goschie testified in her deposition that Plaintiffs timely sent the executed Agreement to Chase in the pre-paid FedEx envelope. (Yoshida Decl., Ex. 2, pp. 54:25-55:22). Chase did not receive the executed Modification Agreement by the November 24, 2009, deadline. (Mullen Decl., ¶ 5).

Between November 17, 2009, and November 24, 2009, Chase checked with FedEx on four occasions and confirmed each time that the package's tracking number had not been activated. (Mullen Decl., ¶ 5). Chase also checked with FedEx on an additional ten more occasions between December 2009 and March 2010. On each occasion, Chase confirmed that the tracking number had not been activated. (*Id.*).

## 2. **The Second Loan Modification Offer**

Plaintiffs made payments to Chase in the approximate amount of $2,420.00 in the months of January, February, March, and April 2010. (Mullen Decl., ¶ ¶ 7-8). Because Chase had not received the signed modification agreement and because those payments were insufficient to pay the payments due under Plaintiffs' original Note, the January and March payments were held in suspense. (Mullen Decl., ¶ ¶ 6-7).[2]

---

[2]    The January 2010 payment was held in suspense because it was insufficient to cover the amount due under Plaintiffs' original Note. As a result, no funds were applied to Plaintiffs' loan (i.e., interest or escrow) in January. Upon receiving Plaintiffs' February payment, $2,732.01 was applied toward interest and $1,273.28 was applied toward escrow. A similar pattern occurred in March and April 2010. When Chase received Plaintiffs' March payment, it was placed in suspense because it was insufficient to cover the existing contractual payment. Chase then disbursed $2,732.01 toward interest and $1,273.28 toward escrow when it received Plaintiffs' April payment. (Mullen Decl., ¶ ¶ 6-7).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

On March 19, 2010, Plaintiffs spoke with a Chase representative to check on the status of their loan. (Mullen Decl., ¶ 8). At that time, Chase advised Plaintiffs that it had never received the executed agreement. (*Id.*). On March 22, 2010, Plaintiffs sent Chase an executed copy of the Final Modification Agreement via fax. (*Id.*). The signed Agreement was a copy of the Agreement that Plaintiffs allegedly sent in November 2009. (Yoshida Decl., Ex. 2, p. 58:15-25). The executed Agreement was then uploaded onto Chase's internal system. (Mullen Decl., ¶ 9).

Due to the nearly four-month delay in receiving the executed agreement, Chase determined that a new modification agreement would need to be processed. On or about May 13, 2010, Chase sent Plaintiffs a second Modification Agreement proposal, which included an acceptance deadline of May 23, 2010. (Mullen Decl., Ex. 3). The terms of the Modification Agreement were substantially similar to the original proposed agreement. The second proposed agreement included the same re-amortized 40-year loan term and reduced interest rate schedule. (Mullen Decl., Ex. 3, p. 6). The only substantive difference was that the APB of the new agreement was $544,542.61. (*Id.*). The APB of the May 2010 Agreement was $7,706.27 higher than the APB of the November 2009 Agreement because of the many months of missed payments between November 2009 and May 2010. (Mullen Decl., ¶ 10).[3]

Plaintiffs declined to sign the new agreement offered to them. (Yoshida Decl., Ex. 2, p. 30:7-12). Instead, on or about May 24, 2010, plaintiff Teri Goschie made a counteroffer to a Chase representative named John Rosales. (Mullen Decl., ¶ 11). Mrs. Goschie advised Mr. Rosales that they wanted a principal reduction to the original $495,000 amount, a reduction of approximately $50,000, which was a lower balance than the first modification agreement offered. (Yoshida Decl., Ex. 2, p. 30:7-12; Ex. 3, pp. 2-3). Plaintiffs also requested a 30-year term, rather than the 40-year term reflected in the proposed Agreement. (Yoshida Decl., Ex. 3,

---

[3]     The proposed May 2010 loan modification called for an initial monthly mortgage payment of $2,466.54, which consisted of $1,616.31 in principal/interest and $850.23 to cover escrow expenses. Unlike the November 2009 Agreement, which called for a $3,000 balloon payment at the end of the 40-year loan term, the proposed May 2010 agreement called for a $10,800 balloon payment. (Mullen Decl., Ex. 3, p. 6).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

pp. 2-3). Mr. Rosales advised her that the proposed modification terms were final and that he was not in a position to negotiate the terms. (Mullen Decl., ¶ 11).

Plaintiffs filed this lawsuit on or about December 22, 2010. Plaintiffs have continued to reside at the Property since filling this lawsuit. (Yoshida Decl., Ex. 2, p. 5:19-21). They have not made mortgage payments or paid any property taxes or insurance in over four years, since April 2010. (Yoshida Decl., Ex. 2, p. 31:19-23; 32:14-33:15; 33:19-34:3; 34:23-35:14; 50:23-25; 51:1-12).

### 3. **Litigation History**

Plaintiffs' theories of liability have changed several times throughout this lawsuit. When Plaintiffs filed this action December 23, 2010, they asserted claims for violation of the Real Estate Settlement Procedures Act (RESPA), breach of contract, breach of the implied covenant of good faith and fair dealing and unjust enrichment on the basis that Chase allegedly misapplied $19,000 in payments "as unearned and unidentified fees." Plaintiffs also alleged that Chase failed to respond to a qualified written request (QWR), which was mailed to Chase, through counsel, on or about July 15, 2011. (Compl., ¶¶ 9-13).[4]

In November 2011, Chase provided Plaintiffs with a "payment application history" spreadsheet, which established that the contested amounts were properly applied in accordance with the Deed of Trust to pay for various escrow expenses, including Plaintiffs' mortgage insurance and monthly PMI payments, which Plaintiffs failed to pay. (Yoshida Decl., ¶ 5). Rather than dismissing their contract-based claims, however, Plaintiffs replaced their "misappropriation" claim with a new theory: That Chase mishandled their November 2009 modification agreement paperwork, which resulted in Chase offering Plaintiffs a second agreement with less favorable terms. (First Am. Compl., ¶¶ 26, 33).

---

[4]       With respect to their "misappropriation" claim, Plaintiffs' Complaint sought damages in the amount of approximately $57,000, which was "three times the amount Chase charged them for unearned fees[.]" (Compl., ¶ 16).

Page 8 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

Plaintiffs' Amended Complaint sought damages in the amount of $7,706.27, which reflected the difference between the $536,836.34 APB of the November 2009 Modification proposal and the $544,542.61 APB of the May 2010 modification proposal. Plaintiffs also sought to recover attorney fees pursuant to ORS 20.082 on the basis that they sent Chase a demand for payment, which Chase did not pay. (First Am. Compl., ¶¶ 34-36). That demand was sent on December 9, 2011, after this lawsuit had been pending for approximately one year. (Yoshida Decl., Ex. 4).

On February 14, 2013, Plaintiffs filed their Second Amended Complaint, alleging that Chase intentionally mishandled Plaintiffs' loan modification paperwork in order to drive them into foreclosure and profit from the sale of the Property. Plaintiffs' Second Amended Complaint added claims for breach of the Oregon Unlawful Trade Practices Act ("UTPA") and common law fraud. Plaintiffs also added several new theories of damages due to Chase's allegedly intentional conduct, including $100,000 in non-economic damages and $1,000,000 in punitive damages.

In July 2013, Chase served Plaintiffs with written discovery requests concerning Plaintiffs' new intentional tort and punitive damages claims. (Yoshida Decl., ¶ 8). The majority of Plaintiffs' responses merely reasserted the factual allegations in Plaintiffs' Second Amended Complaint. However, Plaintiffs also provided Chase with the declarations of four former Chase employees, which were originally submitted by an individual named Jean Wilcox in an unrelated case pending in the United States District Court, California Central, Case No. 8:10-cv-01923. (Yoshida Decl., Ex. 6).[5] The four declarants represent that they were employed in Chase's loss mitigation department in Rancho Bernardo, San Diego, and that employees of that office delayed and obstructed customers from obtaining permanent loan modifications. (*Id*.).

---

[5]     The California case was then transferred to an MDL proceeding entitled *In re: JPMorgan Chase Mortgage Modification Litigation* in United States District Court, District of Massachusetts.

Page 9 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## SUMMARY OF PLAINTIFFS' LEGAL CLAIMS AND ALLEGED DAMAGES

Plaintiffs' Second Amended Complaint alleges claims for breach of contract, breach of the covenant of good faith and fair dealing, fraud, and violations of RESPA and the UTPA.

### 1. Violation of RESPA

Plaintiffs' RESPA claim alleges that Chase failed to respond to a qualified written request ("QWR") for accounting information, which was sent to Chase on or about July 15, 2011. Plaintiffs allege that they are entitled to recover actual damages caused by Chase's failure to respond, $1,000 in statutory damages, and reasonable attorney fees. (Second Am. Compl., ¶¶ 13-14). When Plaintiffs filed their Second Amended Complaint, they added an additional allegation that they are entitled to recover an additional $100,000 in damages because Chase engaged in "a pattern or practice of noncompliance." (Second Am. Compl., ¶ 15).

Chase has judicially admitted the basic factual allegation supporting Plaintiffs' RESPA claim on numerous occasions since that time. (*See, e.g.,* Chase's Answer to First Am. Compl., ¶¶ 10-11). However, Chase denies Plaintiffs' recently added allegations that Chase engaged in a "pattern or practice of non-compliance with the requirements of the mortgage servicer provisions of RESPA." (Chase's Answer to Second Am. Compl., ¶ 13).

### 2. Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' second and third claims for relief allege that Chase breached its contract and implied covenant of good faith and fair dealing to Plaintiffs by increasing the APB of Chase's proposed modifications from $536,836.34 to $544,542.61. (Second Am. Compl., ¶¶ 33-35, 38). Plaintiffs allege that they strictly complied with the terms of the November 2009 agreement, and that Chase therefore breached its contractual duty to Plaintiffs by "unilaterally" initiating a new Modification Agreement dated May 13, 2010. (Second Am. Compl., ¶ 33). Plaintiffs seek the $7,706.27 difference of the proposed modifications as contract damages. They also seek attorney fees pursuant to ORS 20.082.

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

### 3.  Fraud

Plaintiffs also allege that Chase committed fraud by "knowingly" making false representations and omissions "with the intent to induce Plaintiff (sic) to enter into the loan modification process." (Second Am. Compl., ¶ 49).  Plaintiffs allege that Chase defrauded Plaintiffs in numerous respects, including by engaging in fraudulent practices in processing Plaintiffs' loan applications; failing to disclose the high likelihood that Chase's "repeated mishandling of their loan modification" would eventually lead to foreclosure; and in failing to disclose accurate information regarding lender fees and advances.  (Second Am. Compl., ¶ 48).  Plaintiffs summarized their fraud claim in response to Chase's First Set of Interrogatories as follows:

> As detailed in the Second Amended Complaint and as indicated by documents produced by Defendant, Defendant made numerous, fraudulent statements to Plaintiff (sic), both in writing and verbally over the telephone, in an effort to hinder, delay, and ultimately prevent the successful modification of Plaintiffs' home mortgage….Defendant concealed the fact that Defendant had no intention of entering into a final home modification with Plaintiffs and that Defendants' internal policies, culture and purposeful lack of oversight were designed to prevent home owners like Plaintiffs from successfully entering into home loan modifications.

(Yoshida Decl., Ex. 3, pp. 6-7).  Plaintiffs seek $100,000 in "economic and non-economic damages" and $1,000,000.00 in punitive damages. (Second Am. Compl., ¶¶ 53-54).

### 4.  Unfair Trade Practices

Plaintiffs' UTPA claim is not substantively different than their fraud claim in that Plaintiffs allege that Chase intentionally sought to drive them into foreclosure.  (Yoshida Decl., Ex. 2, p. 69:23-70:7; Yoshida Decl., Ex. 3, p. 7).  Plaintiffs allege that Chase violated ORS 646.608(k) by "making false statements regarding Plaintiffs' trial payments, by falsely telling Plaintiffs they had incurred substantial fees and fines as a result of the convoluted loan modification process and delays, and by insisting that Plaintiffs had failed to complete the loan

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471

modification application documents and process and would have to reapply for a loan

modification for a third time or face foreclosure." (Second Am. Compl., ¶ 44). Plaintiffs seek

statutory damages of $200 for each alleged violation of the UTPA, reasonable attorney fees,

$100,000 in non-economic damages, and $1,000,000 in punitive damages.

## LEGAL ARGUMENT

1. **PLAINTIFFS' INTENTIONAL TORT CLAIMS ARE NOT SUPPORTED BY ADMISSIBLE EVIDENCE**

   A. **Plaintiffs Cannot Defeat Summary Judgment by Relying on Speculation and Conjecture**

Plaintiffs' fraud and UTPA claims are premised on the unsupported claim that Chase

*intentionally* mishandled their loan modification documents in order to drive Plaintiffs into

foreclosure. Plaintiffs were already in foreclosure due to their own admitted defaulted when

Chase offered them the November 2009 agreement. Plaintiffs' Complaint and discovery

responses are replete with unsupported accusations that Chase engaged in a companywide policy

to "hinder, delay, and prevent" its customers from obtaining loan modifications so that it could

enhance its loan portfolio. (Yoshida Decl., Ex. 4, pp. 6-7). Plaintiff Teri Goschie also testified in

her deposition that she felt that Chase had no intention of entering into a loan modification with

Plaintiffs and that Chase intentionally lost Plaintiffs' November 2009 Modification Application.

(Yoshida Decl., Ex. 2, pp. 64:6-22; 66:9-23).

There is no evidence that Chase sought to intentionally sabotage their chances of

obtaining a loan modification. Instead, Plaintiffs' intentional tort theory appears to be based

largely on Plaintiffs' subjective belief that the Chase representatives they spoke with were rude.

(Yoshida Decl., Ex. 2, pp. 66:13-67:7). For example, Plaintiffs repeatedly point to a

conversation that Teri Goschie had with "John" in May 2010 as supporting their intentional tort

Page 12 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

claims. (Yoshida Decl., Ex. 2, pp. 67:8-68:10). Mrs. Goschie claims that "John" represented to her that Chase "was not in it to lose money" and "our model shows we would make more money by foreclosing rather than re-modifying your loan." (Yoshida Decl., Ex. 2, p. 61:9-21; Yoshida Decl. Ex. 3, pp. 2-3).

Even if the statements made by John Rosales ("John") were true, they do not support Plaintiffs' intentional tort theories. To support a viable fraud claim, Plaintiffs must establish, by "clear and convincing" evidence, that Chase made a false material representation that it knew to be false with the specific intent that Plaintiffs would rely on the representation. *See, e.g., Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or. 390, 407-408, 737 P.2d 595 (1987).[6] The clear and convincing standard is a higher standard of proof than a "preponderance," and requires a showing that the truth of the facts asserted are "highly probable." *Id.* p. 402. Similarly, in order to support a viable UTPA claim under ORS 646.608(k), Plaintiffs must establish that Chase made a willful misrepresentation about "credit availability or the nature of the transaction or obligation incurred." A "willful" violation only occurs "when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.608(10).

Mr. Rosales alleged statements do not support Plaintiffs' fraud or UTPA claims. First, the alleged statements must be looked at in context. Notably, the alleged statements were made (1) *after* Chase already offered Plaintiffs two loan modification offers; and (2) *in response* to Teri Goschie's attempt to negotiate the terms of the modification. As described above,

---

[6]      The Oregon Supreme Court explained the "essential elements of a common-law fraud claim" in *Strawn v. Farmers Ins. Co. of Oregon*, 350 Or. 336, 351-352 (2011), holding that a plaintiff must prove (1) the defendant made a material misrepresentation that was false; (2) the defendant did so knowing that the representation was false; (3) the defendant intended the plaintiff to rely on the misrepresentation; (4) the plaintiff justifiably relied on the misrepresentation; and (5) the plaintiff was damaged as a result of the reliance. *Id.* at 351-352.

Page 13 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

Mrs. Goschie requested that Chase reduce Plaintiffs' unpaid principal to the original $495,000 loan amount, thus effectively writing off around $50,000 in principal/interest.

Further, such comments (even if true) have no bearing on the underlying question of whether Chase had a specific intent "to prevent home owners like Plaintiffs from successfully entering into home loan modifications." (Yoshida Decl., Ex. 3, p. 7). As stated above, Chase had already offered Plaintiffs two modifications at that time, and it only increased the second modified loan balance by approximately $7,700 due to the intervening months of missed payments.[7] Furthermore, Plaintiffs have no evidence that Chase lost the November 2009 Agreement, let alone that it <u>intentionally</u> mishandled or destroyed the Agreement. Chase repeatedly checked with FedEx regarding the status of the November 2009 modification paperwork and determined that the tracking number had not been activated.

Plaintiffs cannot rely solely on speculation and conjecture (i.e., what Chase *may* have done) to support their intentional tort claims. Rather, Plaintiffs must come forward with specific admissible evidence showing that Chase "intentionally" sought to sabotage *their* loan modification application, as alleged in their Complaint. Plaintiffs cannot do so. The very fact that Chase offered a second loan modification belies Plaintiffs' position that Chase never intended to modify their loan. Plaintiffs rejected the modification offer because they wanted a better deal in the form of a principal reduction. Plaintiffs' Fraud and UTPA claims fail as a matter of law.

---

[7]    Plaintiff Teri Goschie testified in her deposition that she believes that the APB of the second modification offer was closer to $563,000, an increase of over $25,000. (Yoshida Decl., Ex. 2, p. 62:22-63:13).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## B. The Court Should Strike Any Inadmissible Prior Bad Act Evidence That Plaintiffs Submit to Oppose Chase's Motion

Chase anticipates that Plaintiffs will oppose Chase's Motion by relying on various types of "prior bad act" evidence (e.g., litigation involving other consumers, unrelated consumer complaints, etc.) to support their claim that Chase engaged in a companywide policy to force borrowers into foreclosure by intentionally losing their loan modification paperwork.[8] In particular, Chase anticipates that Plaintiffs will rely on the declarations of Cindy Walker, Debra Stillwell, Erika Penaloza, and Janet Moynihan, which were submitted in the unrelated 2011 California lawsuit discussed above. (Yoshida Decl., Ex. 6). Indeed, Plaintiffs have repeatedly referred Chase to these declarations when Chase has asked Plaintiffs to identify the factual basis supporting their intentional tort claims. (Yoshida Decl., Ex. 3, pp. 3-4; Ex. 5, pp. 2-4).

There are several flaws with Plaintiffs' attempt to rely on such evidence to support their Fraud and UTPA claims. First, the declarations are inadmissible hearsay and not subject to any hearsay exception. Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed.R.Evid. 801. The declarations in question are out of court statements because they were not created for purposes of this litigation. Therefore, in order for the court to even consider the declarations, Plaintiffs must first make a foundational showing that the documents are subject to a recognized hearsay exception.

Further, the declarations have no bearing on *Plaintiffs'* loan modification application. At most, the declarations reflect unverified accusations regarding the loss mitigation practices at *one* particular office -- Rancho Bernardo, San Diego. None of the declarants assisted in processing Plaintiffs' loan modification application. (Yoshida Decl., Ex. 7).

---

[8]    Indeed, in previous filings, Plaintiffs cited enforcement activity by the Federal Reserve and Office of the Comptroller of Currency to support their claim that "the maltreatment they suffered was in fact calculated to drive them from their home so Chase could foreclose on a loan that it acquired following the WaMu collapse for pennies on the dollar." (Plaintiffs' Response to Chase's Motion to Dismiss, p. 4).

MARTIN, BISCHOFF, TEMPLETON, LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

There is no evidence that any employee at the Rancho Bernardo office assisted in processing Plaintiffs' loan modification application.  Plaintiffs went to great lengths during discovery to try to connect the Rancho Bernardo office to Plaintiffs' loan, serving Chase with discovery requests requiring Chase to identify *every* Chase employee who (1) spoke with Plaintiffs or (2) assisted (in any fashion) in processing Plaintiffs' loan modification application over the 16-month period between January 2009 and May 2010.  Chase identified nearly fifty (50) Chase employees that assisted in processing Plaintiffs' loan modification application. (Yoshida Decl., ¶ 10).  None of them was employed in the Rancho Bernardo office.  (*Id*).

## 2.  PLAINTIFFS' PUNITIVE DAMAGES CLAIM SHOULD BE DISMISSED

Plaintiffs also allege that they are entitled to recover $1,000,000 in punitive damages on their fraud and UTPA claims.  To the extent those claims are not dismissed on summary judgment, the punitive damages claims should be.  In Oregon, the evidentiary standard governing a request for punitive damages is more rigorous than the standard governing the analysis of the underlying substantive claims.  To award punitive damages, a defendant's "degree of culpability" must be "greater than inattention or simple negligence."  *Badger v. Paulson Inv. Co., Inc.*, 311 Or. 14, 28, 803 P.2d 1178 (1991).  In 1995, the Oregon legislature codified this standard.  ORS 31.730(1) provides that "[p]unitive damages are not recoverable in a civil action unless it is proven by *clear and convincing evidence* that the party against whom punitive damages are sought has acted with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm and has acted with a conscious indifference to the health, safety and welfare of others."  (emphasis added).

The factual basis supporting Plaintiffs' punitive damages claim is identical to Plaintiffs' "intentional tort" theory of liability.  (Yoshida Decl., Ex. 3, p. 5).  Plaintiffs identified the Rancho Bernardo declarations as evidence to support their claim that Chase acted with "malice" or "reckless and outrageous indifference" in the present case.  (Yoshida Decl., Ex. 5, pp. 3-4).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

Those declarations have no bearing on this lawsuit and Plaintiffs have no evidence that anyone from that office had any connection to their loan. Further, Plaintiffs cannot meet their burden of proving by clear and convincing evidence that Chase even ever lost their loan modification application because FedEx's records show it was never sent to Chase.

### 3. PLAINTIFFS' CONTRACT-BASED CLAIMS FAIL BECAUSE PLAINTIFFS CANNOT ESTABLISH THAT CHASE RECEIVED THE NOVEMBER 2009 MODIFICATION AGREEMENT

Plaintiffs' breach of contract and breach of the covenant of good faith and fair dealing claims are premised on an allegation that Chase unilaterally increased the APB of Chase's proposed modifications from $536,836.34 to $544,542.61, despite Plaintiffs' "strict compliance" with the terms of the proposed November 2009 Agreement. Plaintiffs seek $7,706.27 in contract damages, i.e., the difference between the APBs of the proposed modification agreements.

In order to prove a claim for breach of contract, a plaintiff must establish the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to the plaintiff. *See, e.g., Slover v. Or. State Bd. Of Clinical Soc. Workers*, 144 Or. App. 565, 570, 927 P.2d 1098 (1996). Plaintiffs' contract claims fail for the reasons discussed above – namely, that there is no evidence that Chase received the executed first modification agreement until four months after it expired. The plain language of the proposed offer letter that accompanied the November 2009 Agreement included a set return deadline, requiring Plaintiffs to "sign and return…the Modification Agreement…in the enclosed pre-paid envelope by November 24, 2009." (Mullen Decl., Ex. 2, p. 2). The proposed Modification Agreement further conditioned formation on Chase then executing the agreement and returning it to Plaintiffs. Specifically, the proposed Agreement provided that Plaintiffs' loan would not be modified "unless and until" Plaintiffs received a copy of the Agreement back from Chase with Chase's signature. (Mullen Decl., Ex. 2. p. 7, Section 2C).

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

According to Plaintiffs, they sent the agreement via FedEx in the pre-paid FedEx envelope that accompanied the modification proposal. (Yoshida Decl., Ex. 2, p. 54:25-55:10). They did not retain any record of the tracking number that accompanied the parcel. (Yoshida Decl., Ex. 2, p. 56:7-57:3). Nor did they attempt to contact FedEx to confirm whether the package had been delivered to Chase, even after Chase notified Plaintiffs that Chase had not received the executed agreement in March 2010. (Yoshida Decl., Ex. 2, p. 57:4-7; 57:20-58:14).[9] As a result, Plaintiffs cannot rebut Chase's affirmative showing that neither FedEx nor Chase ever received the packet from Plaintiffs, as evidenced by Chase's having no record of having received the executed agreement, as well as Chase's multiple confirmations with FedEx that the tracking number had not been initiated.

### 4. PLAINTIFFS CANNOT RECOVER ATTORNEY FEES ON THEIR BREACH OF CONTRACT CLAIM PURSUANT TO ORS 20.082

Plaintiffs seek to recover attorney fees pursuant to ORS 20.082. ORS 20.082 provides, in part, that the court shall allow reasonable attorney fees to a prevailing party on any claim based on contract "if the amount of the principal together with interest due on the contract at the time the claim is filed is $10,000 or less." However, in order to invoke the statute, written demand for payment must be made "not less than 20 days before *the commencement of the action* or the filing of a formal complaint under ORS 46.465, or not more than 20 days after the transfer of the action under ORS 46.461." (emphasis added). Plaintiffs did not make a pre-litigation demand for payment. Instead, Plaintiffs' demand was not sent until December 9, 2011, approximately one year after the commencement of the action. ORCP 3 defines "commencement" as "filing a

---

[9]    As described in the "Litigation History," when this lawsuit was filed Plaintiffs alleged that Chase had misappropriated approximately $19,000 in payments. It wasn't until November 2011 that Plaintiffs alleged any irregularities regarding Plaintiffs' request for a loan modification. Chase, through counsel, promptly contacted FedEx to discuss its document retention policy as to any documents concerning the tracking number that accompanied the November 2009 agreement. FedEx advised Chase that any such documents had been purged given the two plus year passage of time. (Yoshida Decl., ¶ 7).

Page 18 - DEFENDANT JPMORGAN CHASE BANK, N.A.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT AND
SUPPORTING MEMORANDUM OF LAW

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

complaint with the clerk of the court." Plaintiffs' Complaint was filed a year before their

demand for payment was sent to Chase. ORS 20.082 is inapplicable.

## CONCLUSION

Based on the foregoing, Chase respectfully requests summary judgment as described

above.

DATED this 6th day of June, 2014.

> MARTIN, BISCHOFF, TEMPLETON,
> LANGSLET & HOFFMAN LLP
>
>
> By:    /s/ Michael A. Yoshida
> Michael J. Farrell, OSB #902587
> mfarrell@martinbischoff.com
> Michael A. Yoshida, OSB #065631
> myoshida@martinbischoff.com
>
> Attorneys for Defendants JP Morgan Chase
> Bank, N.A.

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR 97204
Telephone (503) 224-3113
Fax (503) 224-9471

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I filed the foregoing DEFENDANT JPMORGAN CHASE BANK, N.A.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM OF LAW via the U.S. District Court's CM/ECF Electronic Filing System.  In addition, a true copy of this document was mailed via First Class Mail and deposited in the U.S. Post Office addressed to:

US District Court Clerk
Wayne L. Morse US Courthouse
405 East Eight Avenue, Suite 2100
Eugene, OR 97401

I further certify that by filing said document via the U.S. District Court's CM/ECF Electronic Filing System, a copy thereof was served on the following parties:

William Sherlock
Hutchinson Cox Coons et al
777 High St Ste 200
PO Box 10886
Eugene OR  97440

Of Attorney for Plaintiffs

By causing a copy thereof, addressed to his last known address, and sent by the following

indicated method or methods:

- ■  by U.S. mail, first-class postage prepaid, from Portland, Oregon.
- ☐  by hand delivery.
- ☐  by overnight courier.
- ■  by electronic mail.

DATED:  June 6th, 2014.

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN, LLP

By: _____/s/ Michael A. Yoshida_____
Michael J. Farrell, OSB #902587
mfarrell@martinbischoff.com
Michael A. Yoshida, OSB #065631
myoshida@martinbischoff.com

Attorneys for Defendants JP Morgan Chase
Bank, N.A.

MARTIN, BISCHOFF, TEMPLETON,
LANGSLET & HOFFMAN LLP
Attorneys at Law
888 SW Fifth Avenue, Suite 900
Portland, OR  97204
Telephone (503) 224-3113
Fax (503) 224-9471