IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOE AND TERRI GOSCHIE,                        Case No. 6:10-cv-06424-AA
                                                  OPINION AND ORDER
        Plaintiffs,

    v.

JP MORGAN CHASE BANK, N.A.,

        Defendant.
_____

AIKEN, Chief Judge:

    Defendant, JP Morgan Chase Bank, moves for partial summary judgment against Plaintiffs pursuant to Fed. R. Civ. P. 56. For the reasons below, Defendant's motion is GRANTED in part and DENIED in part.

## Background

    Plaintiffs originally held a mortgage for their residential home with Washington Mutual. In 2009, Plaintiffs defaulted on their loan, which had since been transferred to Defendant. The

1 – OPINION AND ORDER

parties entered into a loan modification process with a trial period plan (TPP) to secure a loan modification agreement which, upon execution, would complete a refinancing of their mortgage. Plaintiffs made these TPP payments as required, and Defendant sent Plaintiffs a loan modification agreement with a deadline of November 24, 2009 to sign and return the agreement.

After several months, Defendant realized that its records did not show the agreement had been received from Plaintiffs. In the meantime, Plaintiffs had made mortgage payments in accordance with the modification agreement schedule. In March of 2010, Defendant informed Plaintiffs that its records did not show the agreement as received and sent Plaintiffs another copy of the original modification agreement. However, Defendant determined that the agreement provisions had lapsed and sent Plaintiffs a second loan modification agreement reflecting the terms of the first agreement. However, the loan balance in the second agreement was $7,706.27 higher. Plaintiffs objected to the increase in balance and attempted to have the agreement reflect the mortgage balance in the first modification agreement. When Defendant declined to reduce the balance, Plaintiffs refused to sign the second agreement.

Between the completion of the TPP and Plaintiffs' refusal to sign the second loan modification, Defendant also requested

2 – OPINION AND ORDER

various documents related to the loan modification process. According to Plaintiffs, at multiple times Defendant informed Plaintiffs that documents they provided were lost, misplaced, incomplete or never received and asked that these documents be resent; Defendant's request included the original loan modification and Plaintiffs' financial statements. Defendant also at one point asserted that Plaintiffs had not fully complied with the terms of the TPP.

In December 2010, Plaintiffs filed an action with this Court. Plaintiffs were granted leave to amend several times. Currently, their second amended complaint alleges: 1) a violation of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2605(f); 2) breach of contract; 3) breach of the implied covenant of good faith and fair dealing; 4) a violation of the Oregon Unlawful Trade Practices Act (UTPA), Or. Rev. Stat. §646.608; and 5) common law fraud. Defendant now moves for partial summary judgment.

## Standard

The court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*,

3 – OPINION AND ORDER

395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (citing *Hunt v. Comartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

## Discussion

Defendant moves for summary judgment on all but Plaintiffs' RESPA claim. Defendant argues that Plaintiffs' contractual claims fail because Plaintiffs cannot establish contract formation regarding the November 2009 modification proposal. Defendant also argues that Plaintiffs' UTPA and fraud claims fail because there is no evidence that Defendant made false or misleading statements to Plaintiffs regarding their loan modification application. Finally, Defendant argues that Plaintiffs' claim for punitive damages fails because Plaintiffs have not produced clear and convincing evidence that Defendant acted with malice or reckless and outrageous indifference as to

Plaintiffs' loan. Defendant maintains that the Declaration of Janet Moynihan submitted in support of Plaintiffs' claims is impermissible hearsay and not relevant.

Plaintiffs respond that it is inappropriate for this Court to grant summary judgment as material issues of fact exist. Plaintiffs do not respond to the hearsay argument regarding to the Moynihan Declaration but argue there is a link between the Declaration and this case, thus making it relevant. As the Moynihan Declaration is cited throughout Plaintiffs' opposition, this Court will first decide this issue.

## I.  Declaration of Janet Moynihan

Courts may disregard evidence supporting a factual allegation if the evidence would not be admissible in court. See Fed. R. Civ. P. 56(c)(2). Ms. Moynihan's declaration essentially states that Chase management encouraged and fostered an atmosphere in which employees were to delay and encumber the loan modification process by losing, destroying or delaying paperwork and by providing misinformation to borrowers. Some declaration statements reflect the personal observations of Ms. Moynihan, such as her statement that the only fax machine in the San Diego office was constantly overloaded, causing delays as thousands of documents were required to be sent to it daily. Moynihan Decl. ¶ 7. Ms. Moynihan's declaration also includes

5 – OPINION AND ORDER

statements from unnamed third parties regarding direct and indirect orders from Chase management. See, e.g., Moynihan Decl. ¶ 5i (Chase management instructed employees "to say whatever it took to make Chase look good").

Hearsay is an out of court statement offered to prove the truth of the matter asserted. Fed. R. Evid. 801(c). Here, the statements in the declaration are offered to prove the truth of the matter asserted by Plaintiffs: that Defendant willfully delayed Plaintiffs' loan modification process in an attempt to foreclose on Plaintiffs' home using these practices. Plaintiff failed to respond to Defendant's characterization of these statements as hearsay and does not assert a hearsay exception to support admission of these statements.

Defendant also argues that Ms. Moynihan's statements are not relevant. Rule 401 states that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Ms. Moynihan's declaration is not relevant in this case because it fails to support Plaintiffs' specific allegations. Again, Plaintiffs allege that Defendant used the practices described by Ms. Moynihan to purposefully thwart the modification process and drive *them* into foreclosure.

6 – OPINION AND ORDER

However, Ms. Moynihan does not assert personal knowledge regarding Plaintiffs' loan modification or the behavior of those who handled Plaintiffs' loan. Plaintiffs nonetheless maintain that some of Plaintiffs' calls to Defendant were made to the Texas loan processing center, and that the Texas loan modification center instituted the same policies as the San Diego loan modification center. Ms. Moynihan does not claim to have actual experience with the Texas office, however, and Plaintiffs present no other evidence that the Texas loan centers utilize the same policies as the San Diego office. Regardless, Defendant supplied a list of employees who had contact with Plaintiffs during the loan modification time period; none were from either the Texas loan modification center the office in San Diego. Thus, this Court finds that Ms. Moynihan's declaration is not relevant under Rule 401, and this Court will not consider it on summary judgment.

## II. Breach of Contract and Covenant of Good Faith and Fair Dealing Claims

Defendant argues that Plaintiffs fail to show existence of a contract to support their contract-based claims. A party claiming breach contract has the burden to establish its existence. *Pendleton Grain Growers v. Pedro*, 271 Or. 24, 28, 530 P.2d 85 (1974). To show the essential "meeting of the minds" in

7 - OPINION AND ORDER

the formulation of a contract, "the acceptance of the offer must be substantially as made." *Northwestern Agencies, Inc. v. Flynn*, 138 Or. 101, 108, 5 P.2d 530 (1931). There cannot be variance between the acceptance and the offer, as "acceptance upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested." *Id.* If any change is made, or condition placed, onto the acceptance of an offer by the offeree, then that constitutes a rejection that cannot subsequently bind the offeror. *Id.*

Further, silence does not amount to assent and cross-offers do not create a contract. *Id.* In sum, "[b]efore the plaintiff [] can recover for services in procuring a loan [for] the defendant, it must prove that the offeree irrevocably accepted the defendant's application precisely as made." *Id.* at 109 (dismissing the Plaintiff's breach of contract claims because of failure to adhere to the conditions set out in the offer); *see also Nelson Equipment Co. v. Harner*, 191 Or. 359, 368-69, 230 P.2d 188 (1951) (adopting this principle of law).

As a matter of law, Plaintiffs have not met their burden to show creation of a contract or the existence of a material issue of fact as to its creation. The loan modification document clearly provides when the agreement became binding:

8 – OPINION AND ORDER

> [t]o accept your modification, <u>you must sign
> and return both copies</u> of the Modification
> Agreement <u>to us in the enclosed, pre-paid
> envelope</u> by **NOVEMBER 24, 2009**…. If you do
> not send both signed… copies of the
> Modification Agreement by the above date you
> may lose your right to get a modification….
> I understand that the Loan Documents will
> not be modified unless and until (i) I
> receive from the Lender a copy of this
> Agreement signed by the Lender, and (ii) the
> Modification Effective Date… has occurred. I
> further understand and agree that the Lender
> will not be obligated or bound to make any
> modification of the Loan Documents if I fail
> to meet any one of the requirements under
> this Agreement.

Mullen Decl. Ex. 2 at 2, 7 (emphasis in original).

Plaintiff relies on *Corvello v. Wells Fargo* to challenge the validity of the language providing that contractual obligations arise only after Defendant receives a signed loan modification agreement, executes the signatures, and returns the signed copy. *Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013). I do not find *Corvello* controlling in this case.

*Corvello* dealt with the discrete issue of "whether the bank was contractually obligated under the terms of the TPP [(trial period plan)] to offer a permanent modification to borrowers who complied with the TPP by submitting accurate documentation and making trial payments." *Id*. at 883. There, the TPP provided that the defendant had an obligation to provide a loan modification offer if the plaintiff completed the TPP, and also stated that:

9 – OPINION AND ORDER

> If prior to the Modification Effective Date,
> (i) the Lender does not provide me a fully
> executed copy of this Plan and the
> Modification Agreement; (ii) I have not made
> the Trial Period payments required under
> Section 2 of this Plan; or (iii) the Lender
> determines that my representations in
> Section 1 are no longer true and correct,
> the Loan Documents will not be modified and
> this Plan will terminate.

*Id*. 881-82.

The Ninth Circuit found that the Defendant's interpretation of the contractual language gave the servicer unfettered discretion whether to offer a modification agreement, despite other contractual and legal obligations to do so. *Id*. at 883. This discretion, the court stated, would turn any obligation under a TPP into an "illusion" by allowing the Defendant to "'simply refuse to send the Modification Agreement for any reason whatsoever — interest rates went up, the economy soured, it just didn't like [the Borrower] — and there would still be no breach.'" *Id*. (citation omitted). The court believed a fairer interpretation of the provision was that "the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain . . . [T]he servicer could not unilaterally and without justification *refuse to send the offer*." *Id*. (emphasis added).

The reasoning behind *Corvello* does not apply in this case. *Corvello* stands for the proposition that modification agreement provisions are invalid when they grant the lender discretion to refuse to offer a modification agreement when a borrower otherwise has met the TPP requirements. Unlike the facts in *Corvello*, it is undisputed that the parties were past the TPP stage, and Defendant twice offered Plaintiffs a loan modification. Further, the Ninth Circuit never held that sign and return provisions themselves were invalid in these types of contracts. *See generally id*. at 883-85. The provision, as applied here, provides a mechanism for the effectuation of the contract. Therefore, I find the contractual language valid.

Apart from their assertion that they did in fact sign and mail the agreement as required, Plaintiffs do not provide evidence to substantiate the formation of a contract. Plaintiffs state that they used a pre-paid FedEx packet provided by Defendant to return the agreement and used a drop box for delivery; however, they did not keep a record as to the tracking number or delivery. First Yoshida Decl. Ex. 2 at 14-16. Further, Plaintiffs state that they never called FedEx to confirm delivery, either before or after discovering Defendant had not received the paperwork. *Id*. Ex. 2 at 16, 17. Meanwhile, Defendant states that it repeatedly checked whether the

11 – OPINION AND ORDER

Plaintiffs' tracking number was activated – apparently it was not – and it never received the agreement by the November 24, deadline. Mullen Decl. at 2.

In similar situations, other courts have found that a party failed to accept a loan modification agreement by failing to return the agreement by the stated deadline. *See Rutherford v. Chase Bank, N.A.*, 2014 WL 4540066, at *3-4 (W.D. Wash. Sept 11, 2014). In *Rutherford*, the parties disputed whether the plaintiff's loan modification documents were accepted, thereby creating a binding contract. *Id.* at *3. The plaintiff claimed that he signed and mailed the loan agreement as evidenced by a DHL courier service slip dated prior to the deadline date. *Id.* at *1. However, the plaintiff was unable to produce a signed copy of the agreement and the defendant's records showed that the agreement was never received. *Id.* The court found no material issue of fact, because the plaintiff failed to offer evidence that the agreement was signed and received as required by the agreement's terms. *Id.* at *3-4.

Here, Plaintiffs present even less evidence that the modification agreement was sent or received by the stated deadline. Further, Plaintiffs took no affirmative action, such as checking the tracking number, to make sure the documents were delivered or received, and Plaintiffs have no record of sending

12 – OPINION AND ORDER

the agreement to Defendant. Finally, as in *Rutherford*, the Defendant has no record of receipt. In sum, as in *Rutherford*, this Court finds no material issue of fact as to the creation of a contract. Accordingly, summary judgment is granted on Plaintiffs' breach of contract and good faith and fair dealing claims.[1]

### III. Fraud Claim

Defendant moves for summary judgment on Plaintiffs' common law fraud claim. The essential elements of fraud are: 1) a material misrepresentation; 2) knowledge that the representation was false; 3) intent that the misrepresentation is relied upon; 4) justifiable reliance on the misrepresentation; and 5) damage as a result of that reliance. *Strawn v. Farmers Ins. Co.*, 350 Or. 336, 352, 258 P.3d 1199 (2011). Oregon courts do not presume fraud when a transaction is equally susceptible to two explanations in which one is consistent with a fraudulent intent and other with good faith and fair dealing. *Galego v. Knudsen*, 282 Or. 155, 159 n.3, 578 P.2d 769 (1978). Here, Plaintiffs fail to present clear and convincing evidence to support the elements

---

[1] Because the court finds that there was not a contract, Plaintiffs' claim for attorney fees under Or. Rev. Stat. § 20.082 is moot and this court will not address the issue further as it presupposes a valid contractual claim.

of common law fraud, and as a matter of law, the claim fails. *Webb v. Clark*, 274 Or. 387, 391, 546 P.2d 1078 (1976).

"The requisite intent to mislead consists of a defendant misrepresenting a material fact for the purpose of misleading the other party or with the knowledge he is misleading the other party, or in reckless disregard of the fact he is misleading the other party." *U.S. Nat'l Bank v. Fought*, 291 Or. 201, 223, 630 P.2d 337 (1981) (citation omitted). Reckless disregard of a fact is the equivalent of gross negligence. *Coffey v. Bd. of Geologist Examiners*, 348 Or. 494, 510, 235 P.3d 678 (2010).

A showing of reckless disregard requires "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth . . . Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968); *see also Wheeler v. Green*, 286 Or. 99, 108 n.6, 593 P.2d 777, 783 n.6 (1979) (adopting the reckless disregard standard articulated in *St. Amant).* However, the mere nonperformance of a promise cannot infer fraudulent intent unless other circumstances of a substantial character are also shown. *Wampler v. Palmerton*, 250 Or. 65, 79, 439 P.2d 601, 608 (1968). While this Court must construe the facts in a light most favorable to the non-moving party, Plaintiffs must provide clear

14 – OPINION AND ORDER

and convincing evidence that reasonably shows that Defendant committed fraud. Plaintiffs have not met this burden.

Plaintiffs allege that Defendant perpetrated a fraud with the intent to induce them into entering the loan modification process. Sec. Am. Compl. at 12. Specifically, Plaintiffs allege the following misrepresentations on which they relied: 1) assuring Plaintiffs they would avoid foreclosure if they completed the loan modification program and completed their trial plan payments; 2) failing to inform Plaintiffs that Defendant's mishandling of their loan modification paperwork could lead to foreclosure; 3) falsely informing Plaintiffs that they had failed to make all of the required trial period payments and misrepresenting information regarding those payments; and 4) failing to disclose accurate information regarding lender fees and advances within the loans. *Id*.

To support these claims, Plaintiffs emphasize the factual history of their loan modification, and Defendant's statements regarding the allegedly lost, incomplete or outdated paperwork required for the loan modification process. For example, Plaintiffs state they spoke with Defendant's representative on December 31, 2009, and were told that the November loan modification agreement had not been applied to their account and that they should call back later to check on the status. Goschie

15 – OPINION AND ORDER

Decl. ¶ 12. However, the representative allegedly never told them that Defendant had not received the loan modification agreement. *Id*. Plaintiffs called again on February 1, 2010, and again, a representative never told them the loan modification documents were not received. *Id*. at ¶ 14. Not until March 1, 2010, did Defendant's representative inform Plaintiffs that they should resend a copy of the loan modification as Defendant has not received it. *Id*. at ¶ 15.

After Plaintiffs faxed a signed copy of the November modification agreement, Defendant again informed Plaintiffs that the documents were incomplete and required additional signatures and dates. *Id*. at ¶ 20. Plaintiffs also point to a conversation with Defendant's representative, Mr. Rosales. Plaintiffs asked him why the updated May 2010 loan modification provided to them had an increased balance of over $7,000, to which Mr. Rosales responded that the increase was due to fees and charges that Defendant placed on the account. *Id*. at ¶ 25. In support of their assertion that Defendant misrepresented the facts regarding this increase in balance, Plaintiffs point to a declaration stating that the increase was largely due to interest that accumulated between November 2009 and May 2010. Mullen Decl. ¶ 10. Plaintiffs also emphasize that Mr. Rosales allegedly said that Defendant was in the business to make money,

16 – OPINION AND ORDER

and that Defendant would be better off seeking foreclosure. *Id.*; First Yoshida Decl. Ex. 2 at 18.

These facts, even if their truth is assumed and viewed in favor of the Plaintiffs, fail to create a question of fact such that a reasonable juror could find, through clear and convincing evidence, that Defendant had the requisite intent to defraud Plaintiffs. Apart from Plaintiffs' subjective belief that Defendant did not intend to modify the loan (Goschie Decl. ¶ 24), and Defendant's representatives were unhelpful (Second Yoshida Decl. Ex. 1), Plaintiffs offer no evidence showing that Defendant acted with reckless disregard in misrepresenting facts about the loan modification or that Defendant intended to misrepresent facts and defraud Plaintiffs.

Further, undisputed evidence shows that despite Plaintiffs' and Defendant's troubles in effectuating the loan modification, Defendant resent paperwork to Plaintiffs and provided them with a second modification agreement. The fact that Defendant provided additional copies of the original loan agreement and attempted to effectuate a second agreement detracts from Plaintiffs' claim that Defendant intentionally perpetuated a fraud. Viewed in favor of Plaintiffs, the evidence reasonably shows that Defendant had repeated miscommunications between its departments; Defendant's representatives provided unhelpful,

17 – OPINION AND ORDER

confusing, and potentially misleading information; and Defendant was unsympathetic and apathetic to Plaintiffs' position. However, this evidence does not establish an intent to defraud.

The only evidence that arguably supports Plaintiffs' underlying allegation is the statements by Mr. Rosales that Defendant would be better off seeking foreclosure. However, Mr. Rosales' statement was made after Defendant sent a second loan modification to Plaintiffs. *See* Goschie Decl. ¶ 22-25. Further, his statements do not support a reasonable inference that Defendant intentionally misled the Plaintiffs, or that it did so with reckless disregard to the truth. Plaintiffs fail to show how Mr. Rosales' opinion about Defendant's business practices is false or supportive of a fraudulent intent by Defendant. "'The evidence may be undisputed, but it is a question for the jury if[] . . . reasonable minds might draw different conclusions from the facts proved. Jurors, however, are not permitted . . . to enter the realm of speculation or to indulge in frivolous and captious objections[]. Only reasonable inferences may be drawn from facts proved.'" *Fleishhacker v. Portland News Pub. Co.*, 158 Or. 476, 484, 77 P.2d 141 (1938).

In sum, Plaintiffs present insufficient evidence to show that Defendant's representatives affirmatively knew and intentionally withheld information that Defendant had not

18 – OPINION AND ORDER

received the original loan modification; that Mr. Rosales intentionally provided false information about the increased balance; or that Defendant purposefully lied and misled Plaintiffs. *See Cruze v. Hudler*, 246 Or. App. 649, 659-60, 267 P.3d 176 (2011) (finding the Defendant had acted with reckless disregard when he represented that the company was in good shape, when he knew that the business partner was currently stealing from other companies, had trouble with bankruptcy, had given him the company's financial numbers, and that the proposed agreement was intended to keep the business afloat).

Thus, as a matter of law, this Court finds that Plaintiffs have not presented clear and convincing evidence by which a reasonable juror could find Defendant acted with intent to defraud. Therefore, summary judgment is granted on this claim.

### IV.  Unfair Trade Practices Act Claim

Plaintiffs allege that defendant engaged in an unlawful practice under the UTPA by making misleading representations concerning the nature of the loan modification process and the obligations incurred. See Or. Rev. Stat. § 646.608(k). Specifically, plaintiffs allege that Defendant made false statements regarding Plaintiffs' trial payments, falsely told Plaintiffs they had incurred substantial fees and fines as a result of the loan modification process, and insisted that

19 – OPINION AND ORDER

Plaintiffs had failed to complete the loan modification documents and would have to reapply for a loan modification or face foreclosure. Generally, Plaintiffs' UTPA claim is based upon the same factual allegations as Plaintiffs' fraud claim. Defendant moves for summary judgment on grounds that many of the alleged misrepresentations are not actionable and that the evidence is insufficient as a matter of law for a jury to find liability under the UTPA.

I agree that Defendant's alleged misrepresentations prior to March 23, 2010 are not actionable, because representations regarding real estate loans or extensions of credit were exempt prior to that date. *See Cullen v. Investment Strategies*, 139 Or. App. 119, 126-27, 911 P.2d 936 (1996) ("[A] lender's material nondisclosures or misrepresentations to a borrower concerning the terms of a loan are not actionable under the UTPA."); Or. Rev. Stat. § 646.605(6)(a), as amended by 2010 Or. H.B. 3706. Thus, the court considers Defendant's alleged misrepresentations only after March 23, 2010; these include statements in April and May 2010 instructing plaintiffs to not make a loan payment and providing inaccurate reasons for the increase in the loan balance. Goschie Decl. at ¶¶ 21, 25.

Important differences exist between UTPA and common law fraud claims. Significantly, "the element of scienter as

20 - OPINION AND ORDER

required in an action for common law fraud is not required by the UTPA." *State ex rel. Redden v. Discount Fabrics*, 289 Or. 375, 384, 615 P.2d 1034 (1980). Under the UTPA, "[a] willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." Or. Rev. Stat. § 646.605(10). In other words, a "defendant is liable for misrepresentations made negligently, without evidence that it was attended by either conscious ignorance or reckless indifference to its truth or falsity." *Redden*, 289 Or. at 385. Thus, unlike fraud, Plaintiffs need not prove that Defendant knew or recklessly disregarded that certain representations were false or misleading; Plaintiffs need only that Defendant should have known. Furthermore, Plaintiffs must only prove that Defendant committed a wrong under the UTPA by a preponderance of the evidence. *Redden*, 289 Or. at 386.

Here, I find that Plaintiffs present sufficient evidence, under the preponderance standard, to support an inference that Defendant misrepresented certain facts. Even though Defendant's statements prior to March 23, 2010 are not actionable, they provide context for its subsequent statements. Viewed the light most favorable to plaintiff, I find that the evidence could support an inference that Defendant's representatives made misrepresentations regarding Plaintiffs' loan modification

21 – OPINION AND ORDER

process and the reasons for the increase in their loan balance, and that Defendant should have known that the statements were misleading. Thus, I find material questions of fact preclude summary judgment on Plaintiffs' UTPA claim under § 646.608(k).

## V. Punitive Damages Claims

Finally, Defendant moves for summary judgment on Plaintiffs' claims for punitive damages regarding their fraud and UTPA claims. See Or. Rev. Stat. §§ 31.730, 646.638(1). Under Oregon law, punitive damages are not available "unless it is proven by clear and convincing evidence" that the opposing party acted "with malice or has shown a reckless and outrageous indifference to a highly unreasonable risk of harm *and* has acted with a conscious indifference to the health, safety and welfare of others." (emphasis added). Id. § 31.730(1). Malice is a "wrongful act done intentionally, without just cause or excuse." *McElwain v. Georgia-Pacific Corp.*, 245 Or. 247, 249, 421 P.2d 957 (1966). A court must determine whether the evidence establishes both elements such that a reasonable juror could find punitive damages were appropriate. *Thompson v. Federico*, 324 F. Supp. 2d 1152, 1170 (D. Or. 2004).

Plaintiffs' factual assertions supporting punitive damages mirror those in support of their fraud claim. As such, the reasoning is much the same. Plaintiffs do not present clear and

22 – OPINION AND ORDER

convincing evidence such that a reasonable juror could find that Defendant acted with malice or reckless and outrageous indifference, and also acted with a conscious indifference to Plaintiffs' health, safety and welfare. Undisputed evidence shows that despite Plaintiffs' and Defendant's troubles in effectuating the loan modification, Defendant resent paperwork and provided Plaintiffs with a second modification agreement. Thus, Plaintiffs' punitive damages claims based on their fraud and UTPA claims fail.

## Conclusion

For the reasons above, Defendant's partial motion for summary judgment (doc. 86) is GRANTED as to Plaintiffs' contract, fraud, and punitive damage claims and DENIED as to Plaintiffs' UTPA claim under § 646.608(k) as set forth above.

IT IS SO ORDERED

Dated this __7th__ day of November.


_____/s/ Ann Aiken_____

Ann Aiken
U.S. District Judge